

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/18/2012**

In re:                                          §
                                                §        **Case  No. 12-33299**
**SBMC HEALTHCARE, LLC,**                        §        **(Chapter 11)**
                                                §
        **Debtor**.                              §        **JUDGE JEFF BOHM**
                                                §
                                                §

---

## MEMORANDUM OPINION ON AMENDED APPLICATION TO EMPLOY JOHNSON DELUCA KURISKY & GOULD, P.C., AS SPECIAL BANKRUPTCY COUNSEL PURSUANT TO §§ 327 and 328(a)
### [Doc. No. 101]

### I. INTRODUCTION

This dispute concerns whether a law firm should represent a debtor when that law firm seeks to have its prepetition claim paid, indirectly, from assets of the estate. Specifically, the law firm wants to be paid from the sale of estate assets to the extent that once the sale or sales have occurred and all creditors have been paid in full, if there are any remaining proceeds to be distributed to the debtor's sole shareholder, then those proceeds will be paid to the firm. The shareholder has agreed to this arrangement, but the United States Trustee vigorously opposes the firm's representation of the debtor under these terms. The United States Trustee contends that no firm with a prepetition claim that is to be paid from assets of the estate should ever be approved as counsel for the estate. The firm and the debtor argue to the contrary and assert that the United States Trustee's position is overly rigid. This Court agrees. Because a debtor's retention of a law firm with a prepetition claim to be paid by the estate is a serious issue over which courts have disagreed, the Court writes this memorandum opinion to explain its rationale in this case for approving the law firm's representation of the debtor.

1

## II. FINDINGS OF FACT

1. On June 4, 2011, Johnson DeLuca Kurisky & Gould, P.C. (the Firm) and SBMC Healthcare, LLC (the Debtor) entered into an agreement for the Firm to represent the Debtor in litigation pending in the District Court of Harris County, Texas. The agreement, which is set forth in a letter on the Firm's letterhead, was signed by Millard A. Johnson (Johnson), a partner of the Firm, and by Marty McVey (McVey), on behalf of the Debtor. Additionally, McVey signed this letter in his individual capacity. [Doc. No. 109-1]. McVey is the president and chief executive officer of the Debtor, and owns 100% of the stock of the Debtor. [Doc. No. 113-10].

2. After the retention letter was signed, the Firm did, in fact, provide legal services in defending the Debtor in litigation pending in the District Court of Harris County, Texas. [Testimony of Johnson]. As of April 29, 2012, the Debtor owed fees and reimbursable expenses to the Firm for these services in the amount of $127,815.30. [Doc. No. 109-2; Testimony of Johnson].

3. On April 30, 2012 (the Petition Date), the Debtor filed a voluntary Chapter 11 petition in this Court. [Doc. No. 1]. The Debtor is a hospital facility that sits on approximately twenty acres of land located in northwest Houston. The facility's operations have been shut down, and there are no longer any patients at the hospital. The Debtor intends to file a liquidating Chapter 11 plan, although the possibility exists that many assets will be sold prior to the plan confirmation date, and that the plan will primarily focus on how the proceeds are to be distributed to various classes.

4. Johnson signed the petition as counsel for the Debtor. [Doc. No. 1].

5. On May 1, 2012, the Debtor filed an application to employ the Firm as general bankruptcy counsel pursuant to §§ 327 and 328(a) of the Bankruptcy Code.[FN1] (the Initial Application) [Doc. No. 4]. The Initial Application cites the experience of the Firm, both with the Debtor in particular, and the bankruptcy practice in general, as primary reasons for seeking this representation. [Doc. No. 4]. The Initial Application also cites the resources and expertise of the Firm as factors supporting the application. [Doc. No. 4]. Additionally, the Initial Application asserts that there is no lack of disinterestedness that would compromise representation. [Doc. No. 4]. The Initial Application also discloses that: (a) the Firm has "received prior payment in the total sum of $50,000.00 for work previously performed in the representation of the Debtor in other business and litigation matters;"[FN2] and (b) "the Debtor still owes the Firm approximately $110,000.00."[FN3] [Doc. No. 4].

6. On May 8, 2012, the United States Trustee (the UST) filed its objection to the Initial Application (the Objection). [Doc. No. 42]. The UST objects on the grounds that the Firm does not qualify under § 327(a) because the Firm, having rendered legal services to the Debtor prior to the Petition Date, holds a prepetition claim against the estate in the amount of $127, 815.30 (the Prepetition Claim). The Court set a hearing on the Initial Application and the Objection for May 29, 2012.

7. On May 25, 2012, the Debtor filed an amended application to employ the Firm, but this time as special bankruptcy counsel (the Amended Application). [Doc. No. 101]. The

---

[FN1] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted.

[FN2] After the Initial Application was filed, Johnson filed a supplemental affidavit stating that the Firm received the payment of $50,000.00 on April 9, 2012 from the Debtor. [Doc. No. 124]. Thus, the Firm received the payment within 90 days of the Petition Date.

[FN3] The Firm subsequently confirmed that the amount is $127,815.30.

Amended Application was filed in response to the Objection. The Amended Application sets forth that the Firm has agreed to waive the Prepetition Claim against the Debtor. [Doc. No. 101]. The Amended Application also sets forth that the Debtor "is simultaneously requesting to hire Marilee A. Madan, P.C. as bankruptcy co-counsel to assist Movant with its bankruptcy case. Ms. Madan has significant bankruptcy experience, particularly as counsel to debtors in Chapter 11 cases. Ms. Madan would not be able to represent Movant in such a large and complex case without assistance as she is a solo practitioner with limited resources; however, with the Firm's resources, and Ms. Madan's expertise, Movant will be well represented. Ms. Madan and Mr. Johnson have worked together on several bankruptcy cases over a period of 20 years, and understand the need for economizing and not duplicating effort. Thus, the Firm and Ms. Madan will work together to effectively represent Movant." [Doc. No. 101].

8. On May 29-30, 2012, this Court held the hearing it had scheduled after the UST had filed the Objection. The hearing was not only on the Amended Application, but also on the separate application of the Debtor to approve Marilee A. Madan (Madan) as general bankruptcy counsel.[FN4]  Present at this hearing were the following persons: (1) Johnson; (2) Madan; (3) Christine March (March), the attorney for the UST; and (4) officers of the Debtor, including McVey.

9. Johnson testified at this hearing, and gave the following testimony:

    a) The Firm will waive the Prepetition Claim as to the Debtor.

---

[FN4] In closing arguments at this hearing, the UST stated on the record that it had decided not to oppose the Debtor's retention of Madan as general bankruptcy counsel. Based upon Madan's testimony, as well as the UST's announcement, the Court approved Madan to serve as the general bankruptcy counsel for the Debtor. [Doc. No. 139]. Her duties, among others, will be to draft and prosecute a disclosure statement and a plan of reorganization as well as to draft and prosecute any other necessary pleadings, including, but not limited to, motions to sell assets of the estate and complaints to recover preferences.

b) The Firm has agreed to waive the Prepetition Claim against the Debtor to alleviate concerns about a lack of disinterestedness in its representation of the Debtor. The Firm has not, however, agreed to waive the Prepetition Claim as to McVey, in his individual capacity. Indeed, the Firm intends to hold McVey to his obligation to pay this debt, as he, in his individual capacity, signed the retention letter.

c) The Firm and McVey have entered into an agreement which is entitled "Assignment of Proceeds" (the Assignment). [Doc. 102-9]. The Assignment sets forth, among other things, that: (1) McVey, as the equity owner of the Debtor, has an interest in any proceeds from the Debtor's Chapter 11 case that are remaining after all creditors have been paid in full; and (2) If, in fact, McVey ever receives a distribution in cash due to his equity interest in the Debtor, then this cash (up to the amount of $127,815.30) shall be paid to the Firm to satisfy the Prepetition Claim.[FN5] Finally, the Assignment sets forth that the Firm will forbear from seeking to collect the Prepetition Claim from McVey for a period of 180 days.

d) The Firm understands and agrees that Madan will serve as general bankruptcy counsel, and that she will take the lead in prosecuting this Chapter 11 case, with the Firm providing support to her in view of the fact that she is a solo practitioner and will need assistance of the kind that the Firm, with its several lawyers and legal assistants, can give. The Firm not only has several attorneys

---

[FN5] The Assignment reflects that the assignor of the proceeds is actually an entity known as McVey & Co. Investments, LLC, which is owned 100% by McVey. Both this entity and McVey, individually, executed the Assignment. For purposes of this Memorandum Opinion, when the Court refers to McVey in the context of the Assignment, the Court is really referring to McVey & Co. LLC.

and legal assistants, but also has some experience representing creditors in bankruptcy court.   Moreover, Johnson testified that because the Debtor's operations have ceased and there is a need to proceed relatively quickly with selling the assets of the Debtor's medical facility, both he and Madan believe that she needs the Firm's assistance in drafting pleadings and the necessary documentation to convey assets that are worth millions of dollars. Johnson and other attorneys at the Firm have extensive knowledge about the particular equipment owned by the Debtor that must be sold to pay creditors, as well as knowledge of negotiations that have been ongoing with the parties interested in purchasing these assets.

10. After Johnson gave this testimony, the UST informed the Court that it still objects to the Firm taking on representation of the Debtor in any capacity.   The UST acknowledges that with the waiver of the Prepetition Claim against the Debtor, the Firm is no longer a direct creditor.   Nevertheless, the UST asserts that the Firm still cannot satisfy the disinterestedness standard because it is looking, at least in the first instance (for the next 180 days), to assets of the estate to pay off the Prepetition Claim. The Firm counters that it has satisfied the disinterestedness standard because the only obligor now personally liable for the Prepetition Claim is McVey, in his individual capacity; the Debtor is no longer liable.   The Firm contends that McVey's assignment to the Firm of any proceeds he receives from this Chapter 11 case is not a bar to this Court approving the Amended Application.   The Debtor joins the Firm in its argument.

### III. CREDIBILITY OF WITNESSES

Johnson and Madan testified at the hearing.  The Court finds that both of them are very credible witnesses and gives substantial weight to their testimony.

### IV. CONCLUSIONS OF LAW

#### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Additionally, this dispute is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir.1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). Venue is proper pursuant to 28 U.S.C. § 1408.

In the wake of the Supreme Court's ruling in *Stern v. Marshall*, 131 S.Ct. 2594, 2609 (2011), this Court must also evaluate whether it has the constitutional authority to sign a final order adjudicating the dispute at bar.  In *Stern*, the Supreme Court held that 28 U.S.C. § 157(b)(2)(C)--which authorizes bankruptcy judges to issue final judgments in counterclaims by a debtor's estate against entities filing claims against the estate--is an unconstitutional delegation of Article III authority to bankruptcy judges, at least when the dispute being adjudicated is based solely on state law and does not affect the claims adjudication process. *Stern*, 131 S.Ct. at 2616.

With regard to the Amended Application, this Court concludes that it has the constitutional authority to enter a final order.  This dispute is based upon express provisions of the Bankruptcy Code; namely, §§ 327(a), 328(a), 101(14)(A), and 1107(b).  There is no state law involved.  So,

because the resolution of this dispute is based solely on bankruptcy law, and not state law, *Stern* does not apply. This Court therefore has the constitutional authority to enter a final order on the Amended Application pursuant to 28 U.S.C. §§ 157(a) and (b)(1).

## B. The Factors Under Section 327(a) That Disqualify an Attorney from Representing A Debtor Cannot Be Read in a Vacuum

Section 327(a) establishes the requirements for the employment of a law firm by a trustee or a debtor-in-possession. This section states that "Except as otherwise provided . . . the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . ." Thus, § 327(a) establishes a two-pronged test that an attorney must satisfy. First, the attorney must not hold or represent an interest adverse to the estate. In deciding whether an attorney holds an interest adverse to the estate, courts have looked for guidance to the Code of Professional Responsibility. *See, e.g., In re GHR Energy Corp.*, 60 B.R. 52, 61 (Bankr. S.D. Tex. 1985) (discussing certain canons of the Code of Professional Responsibility to assess whether the firm in that case held an interest adverse to the estate).[FN6] Second, the attorney must be a "disinterested person." Section 101(14)(A) defines a "disinterested person," in pertinent part, as "a person that . . . is not a creditor . . . and does not have an interest materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. " The two-pronged test thus indicates that any attorneys holding prepetition claims may not be employed by a trustee or debtor-in-possession because they fail to qualify as "disinterested persons" under § 327(a). *In re Talsma*, 436 B.R. 908, 911 (Bankr. N.D.

---

[FN6] Specifically, the court looked to Canon 4 and Canon 5. Canon 4 concerns a lawyer's preservation "of the confidences and secrets of a client," and Canon 5 ensures that "a lawyer should exercise independent professional judgment on behalf of the client." *GHR.*, 60 B.R. 61-62

Tex. 2010). Indeed, these provisions, when read together, appear to establish a very rigid rule: if a law firm looks to assets of the estate to pay that firm's prepetition claim, then the firm may not be approved as counsel for the debtor.

And, that is exactly what the UST argues in the case at bar. In its view, even though the Firm has waived the Prepetition Claim directly against the Debtor [Finding of Fact No. 7], the Firm nevertheless seeks to be paid from assets of the estate to the extent any such assets are distributed to McVey, who will then make a distribution to the Firm. [Finding of Fact No. 9]. Stated differently, the UST contends that the Firm, despite its express waiver of the Prepetition Claim, is still a creditor of the estate; and therefore is "not disinterested;" and, as a result, is disqualified from representing the Debtor under § 327(a) and § 101(14)(A).

This Court disagrees. Sections 327(a) and 101(14)(A) must be read in conjunction with another section of the Code: § 1107(b). This latter provision relaxes what is a rigid rule if one were to read only § 327(a) and § 101(14)(A).


### C. The Language of Section 1107(b) Provides Some Flexibility in Making Determinations Under Section 327(a) as to Whether the Estate May Employ an Attorney

Section 1107(b) states, "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case." Certain courts have interpreted this exception strictly, and have held that an attorney who is not disqualified because of prepetition representation is nevertheless disqualified if he is still owed fees arising from this representation as of the filing date--thus making him a creditor of the debtor. *See, e.g., In re Watervliet Paper Co., Inc.*, 96 B.R. 768 (Bankr. W.D. Mich. 1989). Other courts have, however, adopted the position that an attorney's

monetary claim for prepetition work is not a ground for automatic disqualification from representing the estate. *See, e.g., Talsma,* 436 B.R. at 918 (Bankr. N.D. Tex. 2010) (holding that § 1107(b) allows a debtor-in-possession to employ an accountant who holds a prepetition claim against the estate);[FN7] *In re Best Western Heritage Inn Partnership,* 79 B.R. 736, 740-41 (Bankr. E.D. Tenn. 1987) (an attorney retaining an interest in prebankruptcy fees should not be automatically disqualified from employment); *In re Heatron, Inc.,* 5 B.R. 703, 705 (Bankr. W.D. Mo. 1980) (attorney's status as a creditor "has less significance when his service to the estate will be only a continuation" of prior service to the debtor.); *In re Viking Ranches, Inc.,* 89 B.R. 113, 115 (Bankr. C.D. Cal. 1988) (holding that a prepetition debt to a professional being hired is not necessarily materially adverse, and does not require disqualification).

The Fifth Circuit has not yet directly addressed the issue as to whether an attorney holding a prepetition claim is automatically disqualified from representing the estate. However, the Fifth Circuit recently examined the issue of whether payment of a bankruptcy retainer by a third party is a disqualifying interest. *In the Matter of Am. Int'l Refinery, Inc.,* 676 F.3d 455, 462 (5th Cir. 2012). The Fifth Circuit noted that some courts have found that payment of a retainer via third party is a per se disqualification, while other courts have held that the totality of the circumstances surrounding the retainer payment must be scrutinized before deciding if a disqualifying conflict exists. *Id.* In analyzing the arguments, the Fifth Circuit adopted the totality of the circumstances approach. *Id.* In choosing this approach, the Fifth Circuit noted that selecting the per se approach would be inconsistent with its holding in *In re West Delta Oil,* 432 F.3d 347 (5th Cir. 2005). In that case, involving an attorney who simultaneously represented a debtor in a bankruptcy

---

[FN7] *Talsma* involved an accountant, not an attorney. Nevertheless, an accountant, like an attorney, is a "professional" under § 327(a). *See, e.g., Talsma,* 436 B.R. 911; *In re Michigan General Corp.,* 77 B.R. 97, 100 (Bankr. N.D. Tex. 1987). Accordingly, *Talsma* is as persuasive and applicable to the case at bar as are any opinions involving approval of attorneys.

proceeding and also sought to acquire a financial interest in the debtor, the Fifth Circuit held that the existence of a conflict should be determined "with an eye to the specific facts of each case." *Id.* at 356.

The Fifth Circuit's adoption of a totality of the circumstances approach in both *International Refinery* and *West Delta Oil* argues in favor of this Court adopting a similar approach in the case at bar.

Moreover, the undersigned judge finds the opinion of Bankruptcy Judge D. Michael Lynn in *Talsma* to be very persuasive. In his opinion, Judge Lynn articulates several arguments as to why the rigid application of § 327(a) is incorrect and why a totality of the circumstances approach is more logical. Perhaps the most convincing point is this: "Moreover, every professional becomes a post-petition creditor following employment by the debtor-in-possession. Why a post-petition administrative priority claim should be found to create no conflict of interest while a prepetition general unsecured claim automatically disqualifies the creditor professional eludes the court." *Talsma*, 436 B.R. at 916.

Equally convincing is this point: "[A] professional paid on the eve of bankruptcy may have received a preference--and, as preferee, the professional has a more troubling conflict with the debtor in possession and its estate than it would as a creditor.[FN8]  Adopting a construction of section 1107(b) that allows professionals to retain their prepetition claims saves the debtor from having to pay its professionals in full before filing, thereby conserving and avoiding preferences."

---

[FN8] Section 547 states that a payment made "on or within 90 days before the date of the filing of the petition" may be recoverable once the debtor has filed its bankruptcy petition. Because having received a preferential payment puts the hired attorney in the position of recovering the owed money from himself to give to the debtor, this situation creates a clear adverse interest – much more so than when the attorney remains a creditor at the time of filing. *See Talsma*, 436 B.R. at 917. While some courts have argued that this situation could be avoided by obtaining a retainer, and drawing down on that retainer during the 90-day period so as to avoid the issue of preferential payments, obtaining such a retainer "may not always be possible." 3 *Collier on Bankruptcy* ¶327.04; *see In re Pillowtex, Inc.*, 304 F.3d 246, 255 (3rd Cir. 2002).

*Id.* at 917.   Indeed, Judge Lynn notes that it is good public policy, and common sense, to encourage a debtor to conserve its cash for postpetition use; and therefore to refrain from paying a professional's prepetition invoice promotes this policy.   *Id.*

Additionally, Judge Lynn notes that "a debtor-in-possession, like any client, should be able to choose its own professionals.   Allowing a debtor-in-possession to choose its professionals allows it to control the progress of its bankruptcy case.   It also keeps administrative expenses low by providing the debtor-in-possession the opportunity to retain professionals that do not have to spend time and resources becoming familiar with the debtor's operations."   *Id.*

All of these reasons underscore why a totality of circumstances approach is more appropriate than the rigid rule of forbidding a debtor-in-possession from retaining a prepetition creditor as a professional.   In this respect, both Judge Lynn and the undersigned judge expressly reject the Third Circuit's acceptance of the rigid rule in *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d. Cir. 1994) (holding that the Code "unambiguously forbids a debtor-in-possession from retaining a prepetition creditor.").[FN9]   Indeed, given the Fifth's Circuit's adoption of a totality of the circumstances test in both *International Refinery* and *West Delta Oil*, the Third Circuit's holding has even less persuasive value than might otherwise be the case.

### D. Factors that May Be Considered in a "Totality of the Circumstances" Test for This Case

Both Judge Lynn's opinion in *Talsma*, which approved retention of an accountant holding a prepetition claim, as well as other opinions, which have reviewed proposed retention of professionals holding prepetition claims, offer various factors that should be considered under a

---

[FN9] In his opinion, Judge Lynn notes that the Third Circuit did not discuss the effect of § 1107(b) on the requirement of disinterestedness. *Talsma*, 436 B.R. at 918 n.19.

totality of the circumstances test.  Set forth below are factors that the undersigned judge concludes should be considered, although these factors are by no means exhaustive:

(1) _Does the prepetition claim arise from an ordinary employment relationship with the debtor? Talsma_, 436 B.R. 918.  An affirmative answer favors approval of allowing the debtor to retain the law attorney and his law firm.

(2) _Is the attorney who has applied to represent the estate also an insider of the debtor?_ In re Middleton Arms, L.P._, 934 F.2d 723 (6th Cir. 1991); _In re Leisure Dynamics_, 33 B.R. 121 (D. Minn. 1983); _In re Anver Corp._, 44 B.R. 615 (Bankr. D. Mass 1984). An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(3) _Does the attorney who has applied to represent the estate hold a mortgage or other type of lien on property of the debtor to secure the prepetition claim? In re Pierce_, 809 F.2d 1356 (8th Cir. 1987); _In re CIC Inv. Corp._, 175 B.R. 52 (9th Cir. BAP 1994). An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(4) _Even if the attorney holds no lien on property of the estate, does the attorney hold any other type of interest, direct or indirect, on property of the estate?_  An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(5) _Does the attorney who has applied to represent the estate not only hold a prepetition claim against the debtor, but also represents a third party creditor of the estate?_  In re Roberts_, 75 B.R. 402 (D. Utah 1987).  An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(6) *Does the attorney who has applied to represent the estate have a loan outstanding that is owed to the debtor?* *In re B.E.T. Genetics*, 35 B.R. 269 (Bankr. E.D. Cal. 1983). An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(7) *Does the attorney who has applied to represent the estate have a direct prepetition claim for services rendered prior to the filing of the petition?* *Price Waterhouse*, 19 F.3d at 141. An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(8) *Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as general bankruptcy counsel?* An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(9) *Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as special bankruptcy counsel?* An affirmative answer favors approval of allowing the debtor to retain the attorney and his law firm.

(10) *Does the attorney now, or has he ever, served on the debtor's board?* *Talsma*, 436 B.R. at 918 n.20. An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(11) *Is there an undisclosed relationship pursuant to Rule 2014?* *Talsma*, 436 B.R. at 918 n.20. An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(12) *Has the attorney received potential preferential payments?* *Martin*, 817 F.2d at 180. An affirmative answer disfavors approval of allowing the debtor to retain the attorney and his law firm.

(13) *Is some individual or entity, in addition to the debtor, liable to the attorney who has applied to represent the estate on the prepetition claim? If so, is this individual or entity an insider?* Affirmative answers to both of these questions disfavor approval of allowing the debtor to retain the attorney and his law firm.

(14) *How badly does the Debtor really need to employ the attorney who has applied to represent the estate?* If the debtor really needs the services of the attorney, then this factor favors approval of allowing the debtor to retain the attorney and his law firm.

**E. Application of the "Totality of the Circumstances" Test in the Case at Bar Leads this Court to Conclude that Johnson and the Firm Should Be Allowed to Represent the Debtor and Its Estate, Subject to Certain Conditions, Which this Court, *Sua Sponte*, Imposes.**

A review of all the circumstances in the case at bar leads this Court to conclude that the Amended Application should be granted, subject to certain conditions subsequently discussed herein. Reviewing the fourteen factors outlined above, the Court's analysis is as follows:

(1) *Does the prepetition claim arise from an ordinary employment relationship with the Debtor?* As of the Petition Date, the Debtor owed the Firm the amount of $127,815.30. [Finding of Fact No. 2]. This amount represents the value of the legal services that the Firm provided to the Debtor in defending the Debtor in litigation pending in Harris County District Court. [Finding of Fact No. 2]. These services, and the invoices that the Firm sent to the Debtor for rendering the services, were done pursuant to the retention letter signed by the Firm, the Debtor, and McVey. [Findings of Fact No. 1 and 2]. Under these circumstances, the Court finds that the Prepetition Claim arose from an ordinary employment relationship between the Firm and the Debtor. This factor therefore favors approval of allowing the Debtor to retain the Firm.

15

(2) *Is the attorney who has applied to represent the estate also an insider of the Debtor?*
Neither Johnson nor any other attorney at the Firm is an insider of the Debtor as that term
is defined by § 101(31)(B). This factor therefore favors approval of allowing the Debtor
to retain the Firm.

(3) *Does the attorney who has applied to represent the estate hold a mortgage or other*
*type of lien on property of the Debtor to secure the prepetition claim?* Neither Johnson
nor any other attorney at the Firm holds a mortgage or other type of lien on property of
the Debtor. This factor therefore favors approval of allowing the Debtor to retain the
Firm.

(4) *Even if the attorney holds no lien on property of the estate, does the attorney hold any*
*other type of interest, direct or indirect, on property of the estate?* After the UST objected
to the Initial Application on the grounds that the Firm's holding of the Prepetition Claim
automatically disqualified it from representing the estate, the Amended Application was
filed, and this pleading set forth that the Firm had agreed to waive the Prepetition Claim as
to the Debtor. [Finding of Fact No. 7]. At the hearing, however, Johnson made it clear
in his testimony that the Firm was not waiving the Prepetition Claim as to McVey.
[Finding of Fact No. 9]. Moreover, the Firm and McVey have entered into the
Assignment. [Doc. 102-9]. The Assignment sets forth, among other things, that: (a)
McVey, as the equity owner of the Debtor, has an interest in any proceeds from the
Debtor's Chapter 11 case that are remaining after all non-insider creditors have been paid
in full; and (b) if, in fact, McVey ever receives a distribution in cash due to his equity in
the Debtor, then this cash (up to the amount of $127,815.30) shall be paid to the Firm to
satisfy the Prepetition Claim. Finally, the Assignment sets forth that the Firm will forbear

from seeking to collect the Prepetition Claim from McVey for a period of 180 days. [Finding of Fact No. 9].  The circumstances described above lead this Court to conclude that the Firm now has, at most, an indirect interest in property of the estate.  That is, McVey has a direct interest in property of the estate to the extent that there are any proceeds remaining after all assets have been sold and all non-insider creditors have been paid in full; and then, the Firm has an indirect interest in any of these remaining proceeds up to the amount of the Prepetition Claim (i.e. up to $127,815.30), with the expectation that McVey will deliver these proceeds to the Firm if he ever receives them himself. Because the Firm, at least in the first instance, looks to a distribution to McVey of proceeds from sales of estate assets as the source of payment for the Prepetition Claim, this factor slightly disfavors approval of allowing the Debtor to retain the Firm.

(5) *Does the attorney who has applied to represent the estate not only hold a prepetition claim against the Debtor, but also represent a third party creditor of the estate?*  Neither Johnson nor any other attorney at the Firm represents a third party creditor of the estate. This factor therefore favors approval of allowing the Debtor to retain the Firm.

(6) *Does the attorney who has applied to represent the estate have a loan outstanding that is owed to the debtor?* Neither Johnson nor any other attorney at the Firm has a loan outstanding that is owed to the Debtor. This factor therefore favors approval of allowing the Debtor to retain the Firm.

(7) *Does the attorney who has applied to represent the estate have a direct prepetition claim for services rendered prior to the filing of the petition?* Neither Johnson nor any other attorney at the Firm has a direct prepetition claim.  This is because the Firm has

waived the Prepetition Claim against the Debtor.  [Finding of Fact No. 9]. This factor therefore favors approval of allowing the Debtor to retain the Firm.

(8) *Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as general bankruptcy counsel?*   Neither Johnson nor any other attorney at the Firm will be serving as the general bankruptcy counsel for this case.  Rather, Madan will be serving as general bankruptcy counsel for the Debtor.  [Finding of Fact No. 8]. Indeed, the testimony at the hearing is that Madan will be responsible for drafting and prosecuting the disclosure statement and plan to be filed in this case, and will also be in charge for drafting and prosecuting all other pleadings associated with this case.  [Finding of Fact No. 8].  Additionally, and necessarily, Madan will be conferring with McVey, as the Debtor's president, about such pleadings, including, but not limited to, motions to sell assets of the estate and complaints to recover preferences.  Thus, the Debtor will have a general counsel who is totally independent from the Firm and who holds no prepetition claim against the estate.  Indeed, as general counsel for this estate, Madan knows that she has a fiduciary duty to all creditors of this estate, *In re Turner*, 462 B.R. 214, 221 (Bankr. S.D. Tex. 2011), and that therefore she may well have to counsel the Debtor, through McVey as its president, (a) of the need to file suit against the Firm to recover what may be a $50,000.00 preferential payment [Finding of Fact No. 5], and (b) of the need to sell one or more assets of the estate at a price that will pay all non-insider creditors in full, but leave no remaining moneys for distribution to McVey (which moneys have been assigned and would therefore be distributed to the Firm to pay the Prepetition Claim).  Under these circumstances, the Court finds that Madan has complete independence from the Firm and will be able to provide her unbiased and candid advice to the Debtor on important issues,

including the ones outlined immediately above. Accordingly, this factor favors approval of allowing the Debtor to retain the Firm.

(9) *Is the attorney who holds a prepetition claim and who has applied to represent the estate going to serve as special bankruptcy counsel?* Johnson and the Firm propose to serve as special bankruptcy counsel. [Finding of Fact No. 7]. This factor would typically favor approval of allowing the Debtor to retain the Firm, as special counsel usually is retained for a very specific purpose; for example prosecuting or defending a particular lawsuit. Here, however, the Firm, in its capacity as special counsel, will not only be representing the Debtor in state court litigation and working with the Debtor on compliance with state and federal regulations, but will also be assisting Madan in a variety of matters, including helping her prepare pleadings, examine witnesses, and attending and participating at hearings in this Court. [Finding of Fact No. 7]. Thus, to a certain extent, the Firm is fulfilling more than the typical role of a special counsel. The scope of its representation also crosses over the boundary from special counsel to general counsel. The Court is willing to accept the scope of the Firm's representation because Madan, as general bankruptcy counsel, has been practicing bankruptcy law for approximately 30 years, is well versed in how to prosecute a Chapter 11 case, and is completely independent of the Firm. For all of these reasons, this factor favors approval of allowing the Debtor to retain the Firm.

(10) *Does the attorney now, or has he ever, served on the Debtor's board?* Neither Johnson nor any other attorney at the Firm has ever served on the Debtor's board. This factor therefore favors approval of allowing the Debtor to retain the Firm.

(11) *Is there an undisclosed relationship pursuant to Rule 2014?* Neither Johnson nor any other attorney at the firm has an undisclosed relationship with the Debtor pursuant to Rule 2014. Indeed, the Initial Application and Johnson's supplemental affidavit made the appropriate and necessary disclosures about the Prepetition Claim and the $50,000.00 payment. [Finding of Fact No. 5]. This factor therefore favors approval of allowing the Debtor to retain the Firm.

(12) *Has the attorney received potential preferential payments?* The Firm received payment in the amount of $50,000.00 on April 9, 2012 for outstanding invoices. [Finding of Fact No. 5]. Thus, the Firm has received a possible preferential payment. This factor therefore disfavors approval of allowing the Debtor to retain the Firm.

(13) *Is some individual or entity, in addition to the Debtor, liable to the attorney who has applied to represent the estate on the prepetition claim? If so, is this individual or entity an insider?* Here, McVey is liable to the Firm in addition to the Debtor, as McVey, in his individual capacity, also signed the retention letter that is the basis of the Prepetition Claim. [Finding of Fact No. 1]. McVey is also an insider because he is the President and Chief Executive Officer of the Debtor, and owns 100% of the Debtor's stock. [Finding of Fact No. 1]. 11 U.S.C. §101(31)(B)(i)(ii). This factor therefore disfavors approval of allowing the Debtor to retain the Firm. This is so because McVey, out of fear of being sued by the Firm if he does not authorize the Debtor to take actions in this Chapter 11 case that are recommended by the Firm, could conceivably feel pressure to pursue certain strategy which the Firm wants the Debtor to pursue, but which he himself does not believe is in the best interest of the estate.

(14) *How badly does the Debtor really need to employ the attorney who has applied to represent the estate?*   The testimony of Johnson and Madan convinces this Court that the Debtor really does need to employ the Firm.   Madan is a solo practitioner who is well versed in representation of Chapter 11 debtors, but this particular case is larger, and has more issues and potential disputes, than the Chapter 11 cases that Madan typically undertakes.   The Firm, on the other hand, although it has some experience undertaking representation in bankruptcy courts for creditors [Finding of Fact No. 9], does not have the expertise in debtor representation that Madan has--but it does have several attorneys and legal assistants who can provide the support that Madan will need to properly and effectively prosecute this particular case.   Further, Madan and Johnson have worked together on several bankruptcy cases over a period of 20 years, and they therefore have extensive experience working together and know how to economize and avoid duplication of effort.  [Finding of Fact No. 7].  Moreover, the Debtor very much needs the Firm to help represent it in this case because Johnson and other attorneys at the Firm have extensive knowledge about the particular equipment owned by the Debtor that must be sold to pay creditors, as well as knowledge of negotiations that have been ongoing with the parties interested in purchasing these assets. [Finding of Fact No. 9].   Under all of these circumstances, this factor favors approval of allowing the Debtor to retain the Firm.

Out of the fourteen factors discussed above, eleven favor allowing the Debtor to retain the Firm, and only three argue against approval.  Given this count, this Court concludes that it should approve the Amended Application, although with certain conditions that this Court, *sua sponte*, will impose.

The Court imposes these conditions because the three factors disfavoring approval are, by no means, *de minimis* concerns. With respect to factor number 12, the $50,000.00 payment is quite possibly a preferential payment which the Debtor, because it has a fiduciary duty to all creditors of the estate, *In re Performance Nutrition, Inc.*, 239 B.R. 93, 111-12 (Bankr. N.D. Tex. 1999), *might* well have to seek to recover by filing suit against the Firm. As Judge Lynn noted in *Talsma*, such a situation might well put the Firm in a "troubling conflict." *Talsma* 436 B.R. at 917. With respect to factor number 13, the fact that the Firm--and also McVey--hope that the Prepetition Claim can be paid from sale of estate assets (after all non-insider claims are paid in full) creates the possibility that the Firm and McVey might refuse offers of prospective buyers if the price, even though sufficient to pay all non-insider creditors, is insufficient to generate any excess proceeds for McVey to use to pay the Firm. Moreover, even though the Firm has agreed to forbear from seeking to collect the Prepetition Claim from McVey for a period of 180 days [Finding of Fact No. 9], nevertheless McVey might always be looking over his shoulder in fear of a lawsuit on the 181st day if he is not taking actions, in his capacity as President of the Debtor, that comport with the Firm's recommendations. Finally, with respect to factor number 4--that any distribution of estate cash to McVey will be distributed to the Firm--may also influence McVey's decision making in his capacity as President and Chief Executive Officer of the Debtor.

The Court is keenly aware of the need to balance the harm that could occur to the estate if the scenarios described above actually occur versus the benefit that will immediately accrue to the estate if the Firm is allowed to undertake the proposed representation. It is a close call. And, because it is a close call, this Court, pursuant to its powers under § 105(a), will hold monthly status conferences to ensure that: (1) Madan, as general bankruptcy counsel, provides this Court a report as to whether she believes the $50,000.00 payment is a preference; (2) If it is, whether and

when suit should be filed to recover these monies; and (3) To track the progress of any asset sales which would generate proceeds sufficient to convince this Court that prosecuting the preference lawsuit is not necessary.  Because there is ample case law holding that the Code allows retention of a law firm even if it has received a possible preference, *see, e.g.*, *In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 474 (Bankr. S.D. N.Y. 2007), this Court is willing to approve the Amended Application.  And, moreover, it is by no means clear that the Debtor will ever need to try to recover the $50,000.00 payment (assuming that it is a preference) because there is a reasonable likelihood that the tangible assets of the estate can be sold for sufficient proceeds to pay all creditors in full.  Nevertheless, the Court is sensitive to the possible conflict that exists, and wants to ensure that it monitors this issue on a monthly basis, as well as staying abreast of the Debtor's drafting, filing, and prosecution of a disclosure statement and plan of reorganization.

## V. Conclusion

This Court concludes that a totality of the circumstances test is the most appropriate approach for making a determination as to whether a law firm should represent a debtor when that firm seems to have its prepetition claim paid, however indirectly, from assets of the estate.  Based upon the totality of circumstances in this particular case, the Court is willing to authorize the Debtor's retention of the Firm despite the Firm's looking, as a source of payment of the Prepetition Claim, to any distribution of property of the estate that McVey receives after payment of all non-insider creditors.  The Court trusts that both Madan and the Firm, as well as McVey, will attend all status conferences that this Court holds and be prepared to provide updates on: (a) whether the $50,000.00 payment to the Firm is a preference; (b) what defenses exist to this preference (assuming that Madan believes that it is a preferential payment); (c) whether and when

the Debtor will file suit to recover these monies (assuming that Madan believes that it is a preferential payment); (d) the progress of any asset sales which would generate proceeds sufficient to convince this Court that even if a lawsuit to recover the preference is meritorious, prosecuting such a lawsuit is unnecessary; and (e) what progress the Debtor is making in its prosecution of a disclosure statement and plan.

An order consistent with this memorandum opinion will be entered on the docket simultaneously with the entry of this opinion.

Signed on this 18th day of June, 2012.

Jeff Bohm
United States Bankruptcy Judge